ERA HELICOPTERS, INC.

v.

BELL HELICOPTER
TEXTRON, INC., et al.

Civ. A. No. 85–5197.

United States District Court,
E.D. Louisiana.

Aug. 19, 1987.

On Grant of Summary
Judgment Dec. 16, 1987.

On Remaining Claims Feb. 3, 1988.

ROBERT F. COLLINS, District Judge.

Defendant, Allison Gas Turbine Division, General Motors Corporation (Allison), has moved the Court for summary judgment and to dismiss plaintiff's claims as against it.

In support of its motion, Allison argues that summary judgment should be granted for the same reasons that the Court granted partial summary judgment in favor of defendant, Bell Helicopter Textron, Inc. In that decision, the Court followed the rationale of *East River Steamship Corporation v. Trans America Delaval, Inc.,* 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986). However, whereas the Bell warranty would provide a complete remedy to plaintiff for its economic loss, the Court is not persuaded that any Allison warranty will do the same. Therefore, the reasoning in *East River* will not support the granting of summary judgment in favor of Allison.

For these reasons, the motion for summary judgment is DENIED.

## ON GRANT OF SUMMARY JUDGMENT

Defendant, Allison Gas Turbine Division, General Motors Corporation, has reurged the Court to grant its motion for summary judgment dismissing all claims asserted against it by plaintiff, ERA Helicopters, Inc., that sound in tort. For the following reasons, that motion is hereby GRANTED.

This Court previously denied this motion in its Minute Entry dated August 19, 1987. Subsequent to that, however, the United States Court of Appeals for the Fifth Circuit has rendered an opinion in the case of *Shipco 2295, Inc. v. Avondale Shipyards, Inc.,* 825 F.2d 925 (5th Cir.1987). That case involved a factual situation similar to the one at bar. In it, the Fifth Circuit clarified its position on the case of *East River Steamship Corp. v. Trans America Delaval, Inc.,* 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986).

In *Shipco,* Avondale Shipyards, Inc. (Avondale) sold a ship designed and manufactured by it, which included, as a component part, a steering mechanism manufactured by Allgemeine Elektricitats Gasellschaft Telefunken (AEG). As in the present case, the manufacturer of the vessel and the manufacturer of the component steering mechanism moved for summary judgment dismissing all tort claims against both

manufacturers. The Fifth Circuit Court of Appeals affirmed the granting of those motions for summary judgment and, with regard to the issue concerning AEG, the component manufacturer, stated that:

"Shipco's argument against AEG requires that we consider whether we should reach a different result as to AEG because its contribution to the vessels was limited to a single component, the steering system.

We see no rational reason to give the buyer greater rights to recover economic losses for a defect in the product because the component is designed, constructed or furnished by someone other than the final manufacturer."

.  .  .  .  .

"We are persuaded that the reasons given above for our conclusion that, as to Avondale, the finished vessel is the product, support a similar conclusion as to AEG. The critical fact that Shipco bargained for a finished vessel remains unchanged. Acceptance of Shipco's argument that it can assert a tort claim against AEG would undermine the objective of *East River* that the parties receive the benefit of their bargain. This is particularly true in this case where Shipco bargained with Avondale for the warranty the subcontractors and component suppliers would furnish."

The Court finds that the facts of the instant case are sufficiently similar to those in *Shipco* so as to warrant the same result. The motion by Allison Gas Turbine Division, General Motors Corporation, is therefore GRANTED. All claims asserted by plaintiff against that party which sound in tort are hereby DISMISSED.

## ON REMAINING CLAIMS

■ Defendant, Allison Gas Turbine Operations, A Division of General Motors Corporation (Allison), has moved the Court to grant summary judgment in the above captioned case and dismiss plaintiff's remaining claims against it. For the following reasons, that motion is GRANTED.

This case was originally brought on behalf of ERA Helicopters, Inc. (ERA),

against Bell Helicopter Textron, Inc. (Bell), and Allison claiming damage to a Bell 206L1 aircraft. The Court has granted various motions dismissing all claims against Bell, whether sounding in tort, contract, strict liability, warranty or otherwise. The Court also granted summary judgment and dismissed all claims sounding in tort or strict liability against Allison. The instant claim in warranty against Allison is the last remaining issue in this case.

The helicopter engine that allegedly caused the accident was an Allison 250–C28 series engine number CAE860364. The engine was sold to Bell for inclusion in the helicopter. Bell in turn sold the helicopter to ERA and also assigned the warranty provided by Allison to ERA.

■ It is undisputed by the parties that the New Original Equipment Engine Warranty and Disclaimer Summary, attached to Allison's Motion as Exhibit A, contains the sum of any contractual liability that Allison has to ERA. That document clearly states that the warranty is effective only for twelve months after date of delivery (March 30, 1981), or 1,000 hours of operation, whichever comes first. Not only had the engine been operated for over four years since the date of delivery, but it also had 3,115.8 hours of total operation. The warranty period had therefore expired at the time of the accident.

Even if the accident had occurred during the relevant warranty time period, ERA could still not recover. Paragraph six of the warranty states that:

"The obligations of Allison under this warranty are limited to the repair or replacement of engines or engine parts as provided herein and do not include any remedy or liability for incidental or consequential damages of any kind, whether for damage to airframe or other property, for costs or expenses of operation of engines, for commercial losses of lost profits due to loss of use or grounding of engines or aircraft or otherwise."

Under Louisiana law, the words of a contract must be given their generally prevailing meaning. La.Civ.Code Ann. art. 2047

(West 1977). Additionally, when the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. La.Civ.Code Ann. art. 2046 (West 1977). There is no evidence that the warranty provisions are ambiguous. The Court must therefore hold that the warranty is not applicable to this accident, and even if it was, Allison's obligations would be limited to repair or replacement of the helicopter engine.

The motion for summary judgment is therefore GRANTED.